**E-FILED**
Thursday, 29 September, 2016  03:37:12 PM
Clerk, U.S. District Court, ILCD

IN THE
**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ANGELA M. DAULT,<br>        Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, acting<br>Commissioner of Social Security,<br>        Defendant. | Case No. 1:15-cv-01221-JEH |

### Order and Opinion

Now before the Court is the Plaintiff Angela M. Dault's Motion for Summary Judgment (Doc. 16) and the Commissioner's Motion for Summary Affirmance (Doc. 19). For the reasons state herein, the Court DENIES the Plaintiff's Motion for Summary Judgment, GRANTS the Motion for Summary Affirmance, and AFFIRMS the Administrative Law Judge's (ALJ) Decision denying Ms. Dault's claims for benefits.[1]

I

On June 27, 2011, Dault filed an application for a period of disability, disability insurance benefits, and supplemental security benefits alleging disability beginning on May 2, 2011. Her claim was initially denied on September 23, 2011, and denied upon reconsideration on November 28, 2011. Dault filed a request for hearing concerning her application for disability insurance benefits. A hearing was held before the Honorable Diane Raese Flebbe, administrative law

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 7) on the docket.

judge (ALJ) on November 7, 2012, in Peoria, Illinois. The ALJ issued an unfavorable opinion on December 21, 2012, and the Plaintiff subsequently requested review by the Appeals Council. On May 15, 2014, the Council remanded the claim with instructions to reevaluate the claimant's mental impairments, evaluate third-party opinion evidence under Social Security Ruling 06-03p, and consider new evidence that was submitted to the Council. (AR 165-67).

A second hearing was held before ALJ Flebbe on September 5, 2014. At that time Dault was accompanied by her attorney, Burt Dancey, and her husband, Stephen Dault, who testified at the hearing. A Vocational Expert (VE), Dennis W. Gustafson, also testified. The ALJ denied Dault's claim in her Decision issued on September 16, 2014, finding the claimant not disabled. Dault's request for review by the Appeals Council was denied on March 25, 2015, making the ALJ's Decision the final decision of the Commissioner. On May 29, 2016, Dault filed the instant civil action seeking review of the ALJ's Decision. (Doc. 1).

II

At the time she applied for disability, Dault was a 42 year old married woman living in Pekin, Illinois. On her Form SSA-3368 Dault reported that she had the following conditions: fibromyalgia, chronic fatigue syndrome, numbness/paralysis, sleep problems, and memory loss. (AR 330). Dault reported taking various medication for her symptoms and pain from fibromyalgia. (AR 333). She received treatment for fibromyalgia and involuntary movement in extremities, and symptoms such as numbness, extreme sweating, facial tics, memory loss, trouble sleeping, and inability to stay awake during working hours. (AR 333, 334, 337, 340).

Dault completed three years of college, but does not have a degree. (AR 68). She received specialized secretarial training back in 1987. (AR 331). Previously,

Dault has worked as an emergency dispatcher and in sales as a crafts distributor. (AR 331). However, she asserts that she is unable to work because of her conditions.

On her Function Report, Dault stated that she does laundry for her family, and feeds the dogs, but she no longer walks the puppy because she fell while walking the dog. She can no longer drive comfortably, cook dinner, or clean for long periods of time. (AR 338). She occasionally uses a walker her physical therapist prescribed around the home. (AR 343). Besides her physical symptoms, she reported she is unable to handle the finances because of her memory problems. (AR 340).

At the first hearing before the ALJ on November 7, 2012, Dault testified that she had to leave post-it notes around the house as reminders, and if she could not leave her bed, she would text herself if she took her medication or showered in order to keep track of her activities. (AR 104). She testified that her memory has been an increasing problem. (AR 104).

At the second hearing before the ALJ on September 5, 2014, Dault testified that she was 5'7" and weighted 250 lbs[2]. According to Dault, her doctor attributed her weight gain to medication which he then changed. Although she could not say that her weight impacts her problems or functioning, she testified that she has chronic pain on a daily basis. (AR 68-70). She reports her conditions are unpredictable, with her pain fluctuating on a scale between a four and an eight on a scale from one to ten. (AR 71). She testified that she also has chronic fatigue and some days is unable to get out of bed. She also stated that she has frequent migraines. (AR 72, 83). Dault also testified that she has memory cognitive deficits related to her fibromyalgia, a phenomenon called "fibro fog." (AR 73). She once

---

[2] The Claimant's height and weight changes throughout the record.

again testified that this sometimes affects her short term memory, and her ability to sleep and concentrate. According to Dault, she also has recently been determined to have autoimmune thyroiditis and bipolar disorder. (AR 76).

Upon questioning from the ALJ, Dault testified that she is able to walk down to the basement to do laundry three or four times a week. (AR 77). She also told the ALJ that she has not driven since June of 2011 or 2012. Despite this, Dault said she likes to do crafts about twice a month, paints her own nails, visits with friends once a week, and is able to do dishes and other chores around the house. (AR 78, 82). She also testified that she only went to two out of thirteen of her son's school concerts. (AR 79). When questioned, she testified that she is able to use a computer for an hour and phone for a total of forty minutes. However, she can only go to the grocery with her husband about once or twice a month, and otherwise only goes to the doctor's office. (AR 81-82). She does not regularly attend any other outside activities. She attributes her spending and online shopping problem to her manic episodes. (AR 82). She testified that she has had headaches as long as she can remember. (AR 83). When the ALJ asked if she had them while she was working, she responded that she did, but she called in sick so often that she lost her job. (AR 83).

Next, her husband also testified. Stephen Dault, a deputy sheriff, testified that since the last hearing, his wife's conditions have worsened. He testified that she has to stop and rest while doing dishes. Some weeks, she is unable to walk downstairs to do laundry, and someone else will do the laundry. (AR 85-86).

Finally, the ALJ elicited testimony from the VE. The hypothetical posed to the vocational expert (VE) was the following:

> Okay, I would like you to please consider the ability to perform sedentary and light exertion work with occasional climbing ramps, and stairs, and ladders. Occasional balancing, stooping, kneeling, crouching, crawling. No climbing ropes or scaffolding. No operating

a motor vehicle. No concentrated exposure to temperature extremes or hazards such as dangerous machinery or unprotected heights. I would like you to also please assume only occasional work interaction with the public. And I would like you to assume that because of mental impairments and symptoms combined, Ms. Dault may have periods of exacerbation resulting in moderate limitations in concentration, persistence, or pace such that she retains only the ability for competitive work activities that are detailed, but uninvolved. And to deal with little change in the work place, so no more than a few concrete variables. . . .

\*\*\*

If we then assume a hypothetical individual Ms. Dault's age, education, and work experience are there other jobs that could be performed within the limitations given?

(AR 89-90). The VE testified that although Dault was unable to perform past work, she would be able to work in an unskilled job such as a maid and housekeeping cleaners, and some sedentary and light manufacturing activities such as manufacturing inspection, shadow draft scale operator, or linen grader. (AR 90). Other jobs suggested by the VE were stone setter, mold sheet cleaner, and hand packaging. (AR 91). The VE acknowledged that missing over two days per month might result in loss of employment. (AR 92).

### III

In her second Decision, which was thirty-two pages, the ALJ determined that Dault had the following severe impairments: fibromyalgia, obesity, migraine headaches, obstructive sleep apnea, insomnia, lumbar spine strain, bipolar disorder, anxiety. (AR 27). The ALJ then made the following Residual Functional Capacity (RFC) finding:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light (and sedentary) work as defined in 20 CFR § 404.1567(b) except no

5

more than occasional climbing of ramps, stairs and ladders, balancing, stooping, kneeling, crouching, and crawling; no climbing of ropes or scaffolds; no concentrated exposure to temperature extremes or hazards such as dangerous machinery and unprotected heights; and, no operation of motor vehicles. Due to mental impairments and symptoms combined, the claimant might have moderate limitations in concentration, persistence or pace during period of symptom exacerbation and thus retains only the capacity for competitive work that is detailed but uninvolved and the capacity to handle little change so the work must involve no more than a few concrete variables. The claimant should also have no more than occasional interaction with the general public.

(AR 33). In reaching that finding, the ALJ discussed the testimony and medical evidence on the record. The ALJ explained that Dault's statements concerning the intensity, persistence, and functionally limiting effects of her alleged symptoms were not substantiated by objective medical evidence. Additionally, the ALJ found that the Claimant did not display marked restriction of activities of daily living; maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.

The ALJ found that Dault did not meet Listing 3.10 (sleep-related breathing disorders) or Listing 12.02 (organic mental disorders) because of the lack of evidence. Additionally, the ALJ stated that there are no listings that specifically address the Claimant's migraines and fibromyalgia. The ALJ determined that under SSR 12-2p, which provides guidance for evaluating fibromyalgia, "the evidence fails to establish that the claimant's fibromyalgia considered singly or in combination with other impairments, medically equals any potentially relevant listing." (AR 29). Further, the ALJ did not find that the evidence established the Claimant's weight met any relevant listing.

Additionally, the ALJ found that Dault "has established at most a mild restriction of activities of daily living." In her Decision, the ALJ included

6

statements by Dault, claiming she "prepared sandwiches, did laundry, dusted and vacuumed." However, on her 2011 Form SSA-3374 the Claimant wrote that she can prepare sandwiches, she added "some days I just cant do it" (AR 375), adding that her husband has to get the ingredients from the pantry and fix the meal. She wrote that she can prepare food or meals "maybe 2 times a week depending on how I feel." She reported that she does not prepare full meals because she is unable to stand for long periods of time. (AR 374).

The ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not supported. The ALJ went into details of the Claimant's medical history, from 2010 forward. The ALJ discussed the Claimant's sleeping problems, sleep apnea with associated hypoxemia, and multiple hospital visits for pain, tremors in her extremities, and weakness. (AR 38, 39). The ALJ mentioned that a sleep study doctor encouraged her to lose weight. (AR 38). The ALJ found that objective testing has not revealed great abnormalities in the Claimant's physical health. (AR 48). The ALJ pointed out that Dr. Tate recommended weight loss for the Claimant. (AR 47-48). With regard to the Claimant's headaches, the ALJ determined that the headaches improved when they were treated. He also indicated that he thought her complaints were inconsistent: in 2013, the Claimant stated she had daily headaches, earlier in 2013 reporting on two to three a month, whereas in 2014 she said the migraines occurred four times a week. (AR 48).

Further, the ALJ stated that Dault has established only moderate difficulties in maintaining concentration, persistence, or pace. The ALJ cited the Claimant's questionnaire she completed in 2011. (AR 31). The ALJ also asserted that some of the activities Claimant enjoys require sustained concentration. Although the ALJ acknowledges that Dault leaves post-it notes and texts herself reminders, the consultative psychologist, Dr. Yakin, opined that she was cognitively capable of

understanding, remembering, and carrying out an extensive variety of complex instructions. (AR 31). The ALJ relied upon Dr. Yakin's notes that she seemed to have a good short-term memory and a fair general fund of information, and showed attention and concentration during the evaluation. (AR 32). During a 2012 evaluation with Dr. Patel, the Claimant had difficulty retrieving information and the doctor questioned whether the source was anxiety. In 2014, Dr. Tate reported that the Claimant displayed normal attention and concentration. (AR 32).

The ALJ also found that the claimant's cognitive and mental impairments lacked support in the objective treatment record and in the lack of specialized psychiatric treatment. (AR 50). Instead, the ALJ found that her subjective complaints, such as memory loss, came from her own reports, not from those of Dr. Yakin or Dr. Tate. (AR 49-50). The ALJ also found that the Claimant's bipolar disorder did not meet the requirements of Listing 12.4, stating that although her family doctor assessed her with bipolar disorder, the diagnosis was based on the claimant's subjective allegations rather than clinical evidence. (AR 29). Instead, the psychologist who conducted the consultative psychological examination only found an adjustment disorder and the mental status examinations only revealed depressed or dysphoric mood.

The ALJ gave Dr. Hanna and Dr. Tate, Dault's treating physicians, essentially no weight, explaining that they did not provide adequate reasons for finding the Claimant disabled. (AR 51, 52). The ALJ agreed with the state agency consultants to some extent, specifically the tests they performed; however, the ALJ noted that he gave the Claimant the greater benefit of the doubt regarding her mental impairments. (AR 53). Ultimately, relying on the testimony of the VE, the ALJ found that the Claimant was capable of performing unskilled, sedentary work. (AR 55-56).

## IV

Dault argues that the ALJ erred by: 1) not following the Social Security Ruling 12-2p; 2) giving improper weight to the opinions of the treating physicians; 3) improperly assessing Dault's credibility; 4) not accounting for Dault's limitations in concentration, persistence, or pace; and 5) making factual findings that are not supported by substantial evidence.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)   currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)   suffers from an impairment that is severe or whether a combination of her impairments is severe;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)   is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)   is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

### A

In the instant case, Dault argues that the ALJ erred by not following Social Security Ruling 12-2p, which provides the criteria for fibromyalgia.[3] The Commissioner responds that the ALJ found that Dault's fibromyalgia was a severe impairment, so the diagnostic criteria cited by Dault are inconsequential. According to the Commissioner, the ALJ properly considered whether the fibromyalgia was equal in severity to a listed impairment, and the ALJ addressed Dault's alleged symptoms in her RFC finding.

Fibromyalgia is not a listed impairment. *Thompson v. Colvin, Comm'r of Soc. Sec.*, 2013 WL 12096615, at *14 (C.D. Ill. Sept. 23, 2013). SSR 12-2p provides guidance on how the Administration evaluates fibromyalgia in disability claims, including during the ALJ's sequential evaluation process. The regulations provide that before finding a claimant with fibromyalgia is disabled, it "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p.

At step 3, after it is established that the claimant has medically determined impairment of fibromyalgia, the ALJ will "consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy." SSR 12-2p.

---

[3] Both parties also cite to SSR 96-7p in their Motions, which is used to evaluate a claimant's statements. SSR 96-7p was superseded by SSR 16-3p on March 28, 2016. Accordingly, the Court will discuss the newly revised rule where relevant. https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html.

During the RFC determination, an ALJ "will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days." *Id*. Further:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id*.

In her Decision, the ALJ found the Claimant's fibromyalgia to be a severe impairment. (AR 27). After considering the claimant's subjective pain complaints and the longitudinal record, the ALJ supported her RFC finding with the physical examinations, generally normal findings on diagnostic testing, and Dr. Tate's recommendations of increased physical activity and daily exercise. (AR 49). The ALJ support her finding with objective testing that there has been no great abnormalities, reports that the Claimant's headaches were responsive to treatment at times, and emphasizes Dr. Tate's recommendations for the Claimant's weight loss. (AR 48). The ALJ found the Claimant's medical treatment that reported improvement with treatment, noting that even in periods where her symptoms were exacerbated, there are minimal abnormal physical examinations on record. (AR 47). Specifically, the ALJ cites to reports in the record where Dault's back spasms and headaches were alleviated with medication. Also, her spinal range of motion was normal despite subjective complaints of pain and tenderness. (AR 48).

Therefore, the ALJ clearly followed the requirements of 12-2p. Upon reviewing the ALJ's Decision, the Court can see that the ALJ considered the longitudinal record in her RFC finding, including Dault's subjective evidence. The

ALJ further considered the Claimant's activities of daily living (ADLs) (AR 34, 36), medical treatment (AR 35-55), and her husband's testimony (AR 53). Accordingly, the Court does not find a remand is necessary because it is apparent that the ALJ complied with 12-2p.

**B**

Similarly, the Claimant argues that the ALJ improperly weighed the treating physicians' medical opinions. The Claimant contends that the ALJ improperly discounted evidence of the Claimant's tenderness and hypersensitivity to touch. The Commissioner counters that the ALJ considered the relevant regulatory factors in determining what weight to afford each medical opinion. 20 C.F.R. § 404.1527. Specifically, the ALJ discussed to which degree their opinions were supported by the other medical evidence on record. According to the Commissioner, Dault does not properly raise objections to the ALJ's findings of Dr. Tate's opinion. The Commissioner, at length, argues that objective evidence is relevant in assessing functional limitations of fibromyalgia although there is no objective proof of fibromyalgia. (Doc. 20, p. 8-9).

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). An ALJ must provide "good reasons" for discounting such opinions. *Cambell v Astrue,* 627 F3d 299, 306 (7ᵗʰ Cir 2010). Should an ALJ provide such "good reasons" for discounting a treating physician's opinion, she must then decide what weight to give that opinion. *Id.* at 308. If the ALJ does not give a treating physician's opinion controlling weight, the Social

13

Security regulations require the ALJ to consider:  1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion.  20 CFR § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In her Decision, the ALJ stated that Dr. Hanna and Dr. Tate deserved no weight, explaining that the objective evidence did not support their opinions. (AR 50-52). The ALJ found that Dr. Hanna's, the claimant's rheumatologist, January 2012 Attending Physician's Statement of Disability deserved no weight because he had only seen Dault once when he completed this form. (AR 50). Additionally, the ALJ found that Dr. Hanna provided no rationale for his findings that Dault was disabled. The ALJ determined that a May 2012 report also deserved essentially no weight because he does not provide discussion or explanation of how Dault's conditions prevent her from working. The ALJ gave an August 2012 report essentially no weight because Dr. Hanna did not document any examination that he performed on Dault. (AR 51). The ALJ afforded no weight to a February 2013 letter, again because the ALJ found that Dr. Hanna failed to provide a rationale or explanation why the Claimant's symptoms prevented her from obtaining work. The ALJ claims that Dr. Hanna only provides a list of diagnoses and a "recitation of the claimant's subjective allegations (as the doctor has no first-hand knowledge of the claimant's daily activities or struggles with such activities)." (AR 51-52). Indeed, the ALJ adds that:

> Fibromyalgia, depression, migraines, chronic pain, and chronic fatigue are all potentially controllable with proper treatment. Memory or cognitive deficits can potentially be compensated for with techniques such as making lists or limiting performance to simpler tasks.

(AR 52). Overall, the ALJ gave Dr. Hanna's opinions essentially no weight because objective medical record does not support his findings. (AR 52).

Similarly, the ALJ gave essentially no weight to Dr. Tate, the claimant's family doctor. The ALJ pointed to the Claimant's bipolar diagnosis, for which Dr. Tate does not substantiate. Dr. Tate also opined that Dault's symptoms prevented her from sustaining gainful employment; however, the ALJ determined that these statements were based upon Dault's own dramatic representations. The ALJ specifically discussed Dr. Tate's reports that the Claimant was hypersensitive to touch but otherwise appeared normal. (AR 52). The ALJ asserted that the Claimant's impairments are potentially controllable with proper treatment. (AR 52).

Here, the ALJ found that the doctors' findings were not supported by the record, particularly the mental impairments. Moreover, the ALJ specifically stated that Dault's tenderness and hypersensitivity were not enough to find the symptoms disabling. (AR 51-52). The Court finds that the ALJ did not err in affording the doctors' findings with essentially no weight. The ALJ considered the factors for why she did not give the treating physicians' opinions controlling weight. She considered the length of the treatment relationship of Dr. Hanna and the Claimant, as she gave a detailed overview of his reports and opinions, and discounted all of them. (AR 50-52). Further, the ALJ considered the specialties of each physician and explained that Dr. Hanna's opinions are not supported by any objective medical evidence, are not supported by any physical or mental examinations, and contain unexplained conclusions and findings. (AR 52). Similarly, the ALJ gave Dr. Tate's opinion that Dault's ADLs and ability to complete sedentary work were limited no weight. The ALJ explained that this was because Dr. Tate's knowledge solely comes from Dault's statements, which he called "questionable." (AR 5). In particular, the ALJ found that Dr. Tate reported

her overly dramatic behavior. (AR 52). In fact, the ALJ specifically does not discount Dault's diffuse tenderness to palpation and hypersensitivity to touch, which are Dr. Tate's findings. Rather, the ALJ takes issue with his conclusion that her impairments and other symptoms result in her being unable to work. (AR 52).

The Court finds that the ALJ built a logical bridge from the evidence of record to her credibility findings. *Murphy v Colvin*, 759 F3d 811, 815 (7th Cir 2014), quoting *Schmidt v Barnhart*, 395 F3d 737, 744 (7th Cir 2005) (explaining that the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence"). In other words, this Court can "trace the path" of the ALJ's reasoning where he clearly articulated where she departed from the treating physicians' opinions. See *Diaz v Chater*, 55 F3d 300, 307 (7th Cir 1995) (stating that an ALJ must articulate at a minimum level his analysis of the evidence to allow the appellate court to trace the path of the ALJ's reasoning). Accordingly, the weight given to Dr. Tate and Dr. Hanna do not warrant a remand.

## C

Dault also claims that the ALJ erred in assessing her credibility. Dault argues that the ALJ did not recognize that fibromyalgia symptoms will wax and wane, pursuant to SSR 12-2p. For example, the ALJ referenced Dault's EMG and nerve conduction study result which each indicated she was able to walk unassisted and performed normally on the seated straight leg raising test. (Doc. 17, p. 28-29). Dault

16

argues that these findings are not inconsistent with her fibromyalgia and mental health issues.[4]

The Commissioner replies that the ALJ's credibility determination is conclusive unless patently wrong. The ALJ gave some weight to the Claimant's testimony and function reports, and included some additional restrictions in her RFC determination. Commissioner adds that the ALJ discounted, rather than ignored, the Claimant's testimony in light of medical evidence and other regulatory factors. (Doc. 20, p. 10).

The ALJ must consider all of the individual's symptoms with the entire case record, including medical and nonmedical sources. SSR 16-3p. A claimant must provide credible testimony and objective evidence to qualify for disability insurance benefits for allegations of disabling pain. *Moothart v Bowen,* 934 F.2d 114, 117 (7th Cir 1991). If a claimant's statements "about the intensity, persistence, and limiting effects of symptoms are inconsistent" with the other evidence, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . ." *Id.* "Although an ALJ's credibility determination is usually entitled to deference, 'when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision.'" *Clifford v Apfel,* 227 F3d 863, 872 (7th Cir 2000), quoting *Herron v. Shalala,* 19 F3d 329, 335 (7th Cir 1994). In other words, the ALJ's credibility determination may only be reversed if it is "patently

---

[4] Claimant also makes the argument that her rheumatologists, Dr. Miller and Dr. Hanna, had normal findings on various tests but still opined that the Claimant had fibromyalgia. (Doc. 17, p. 29; AR 627, 684-686). As discussed above, the ALJ did find that the Claimant had fibromyalgia, but determined this impairment did not equal a listing or result in a finding of disability.

wrong." *Ingram v. Colvin*, 2014 WL 3704816, *6 (C.D. Ill. July 25, 2014), citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir 2010).

The Seventh Circuit has addressed the complications of considering evidence of fibromyalgia:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996). Finally, an ALJ must build an accurate and logical bridge to support her decision to believe medical reports and disbelieve the claimant's own testimony. *Id*.

In the instant case, the ALJ clearly outlined why she was discounting Dault's claims. The ALJ accounted for the Claimant's fibromyalgia and its ability to wax and wane when she discussed Dault's medical records in depth. First, the Claimant displayed normal attention and concentration during mental exams, so the ALJ discounted her memory claims. Second, although Dault displayed tender points during physical examinations, her other physical signs are normal. Nothing in the record indicates neurological deficits or musculoskeletal abnormalities that would show any significant decrease in physical activity. (AR 53-54). The ALJ lists other evidence in the record that medication could treat symptoms such as back spasms. (AR 54). Also, the ALJ added that Dr. Hanna has discussed the possibility of trigger point injections for treatment, she notes that the Claimant has not opted to use this treatment. Indeed, the ALJ went so far as to suggest that the Claimant

18

has not followed her doctors' suggestions; she has not attempted to lose weight nor use the low cost YWCA pool in Pekin to help her condition. (AR 54). This is not an instance where the ALJ is playing doctor. See *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir 1996). Rather, Dr. Tate encouraged weight loss and exercise to Dault at least four times in the record. (AR 48-49), although Dault admitted she did not exercise regularly. (AR 44).

Further, Dault testified her migraines occurred twenty days a month, while she told her doctors these only occurred a few times a year. Dault had overly dramatic mannerisms at her doctor visits, which the ALJ determined to be exaggerations. Indeed, Dr. Tate, the Claimant's own treating physician, repeatedly described her physical constitutional appearance with this description: "obese, tearful, overdramatic mannerisms." (AR 245, 249, 758, 859).

The ALJ deemed Dault's mental health statements more credible than the state agency assessments (AR 53), which is why she limited Dault to sedentary work. (AR 55). Further, the ALJ complied with SSR 16-3p when she explained which symptoms she found consistent or inconsistent with the record. The Claimant appeared and testified before the ALJ twice, and the Court considers this in the ALJ's assessment of the Claimant's exaggerations of her symptoms. Therefore, for the reasons stated above, the Court finds that the ALJ's credibility assessment was not patently wrong.

### i

The Court further notes that the ALJ also discounted some of Claimant's testimony on her ADLs. The ALJ found that "[t]he Claimant has established at most a mild restriction of activities of daily living." (AR 30). To support this finding, the ALJ cited to three ADL reports the Claimant completed in 2011. The ALJ stated that these restrictions are due to Dault's physical, not mental,

impairments. In her Motion, Dault raises the objection that the ADLs listed by the ALJ are not mild.

According to the Seventh Circuit, "the absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, __ F.3d ___, *4 (2016). In fact, the Seventh Circuit has stated that "without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant]'s successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible." *Id.* at *5. The Seventh Circuit explained that there are "critical differences" between ADLs and the demands of a job, such as "flexibility in scheduling," assistance from others, and no "minimum standard of performance." *Id.* See also *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) ("The ALJ's invocation of [the claimant]'s activities of daily living to discount her testimony that her limitations are more than minimal also is problematic because her ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full-time job, much less the Step 2 threshold that any limitations would be no more than minimal.").

In the instant case, Dault testified that her memory problems prevent her from driving, and stated that she once got lost coming back from her son's school. (AR 105). It is difficult for her to read because she does not remember what she read. (AR 121). She testified that she was only able to get out of bed two out of seven days. (AR 106). In 2011, she reported that she is unable to cook, clean, shop, and drive because of her illness. (AR 374). If she goes to the store with her husband, she uses the cart to help her move. (AR 114). At the first hearing, she answered that she is confined to her house where her family is there to assist her. (AR 115). She makes greeting cards once or twice a week "maybe." (AR 120). Dault socializes when her friends visit her at home. (AR 121). At the second hearing, she testified

that she does the dishes when she can get out of bed in the morning, but halfway through she has to stop. (AR 69-70). By this time, she testified she only did crafts maybe twice a month. (AR 78).

She also testified that her doctor took her off medication when he determined it caused weight gain, and she lost 23 pounds since July 2014. She has chronic pain on a daily basis. (AR 70). She has thyroid issues that are being treated. (AR 74). She told Dr. Yakin that she has memory problems and needs someone with her to drive and help her shop. (AR 592-94).

The Court can trace the ALJ's reasons for discounting the Claimant's testimony on the ADLs. While it is true that the Claimant's ADLs alone cannot establish that she is capable of engaging in physical activity, the ALJ does not attempt to equate Dault's ability to make crafts or use her phone as evidence that she is capable of sustaining substantial gainful employment. Instead, the ALJ gives a frank description of Dault's testimony on her ADLs. The ALJ limited her RFC accordingly, limiting her to light and sedentary work. (AR 33). She testified that she is unable to stand, and the ALJ took this into account. Further, Dault testified that she is forgetful, but is capable of using a computer, her phone, and occasionally engaging in crafts if she has time. This is consistent with the ALJ's additional finding that Dault is capable of uninvolved work. (AR 54). Finally, as stated above, the ALJ found her restrictions on her ADLs "mild," (AR 30) based on Dault's overdramatic mannerisms and her avoidance of Dr. Tate's frequent advice to lose weight. The ALJ even cites to Dault's memory strategies, such as leaving note reminders, that could be utilized in at least some work settings. (AR 53).

The Court is able to determine that the ALJ did not use Dault's successful performance of her ADLs "as a basis to determine that her claims of a disabling condition were not credible." *Ghiselli* at *5. Likewise, the ALJ discounted Dault's

21

testimony because her opinions "lack support in the treatment record; in particular, the objective longitudinal record, the findings on diagnostic testing, the conservative nature of treatment and the lack of specialized mental health treatment." (AR 53). The ALJ further found that the subjective complaints are unsubstantiated by the objective record, namely, no evidence of loss of strength or loss of motion. The Court recognizes that the symptoms of fibromyalgia are subjective and "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

In the present case, the ALJ clearly states why she rejects Dault's subjective complaints. The ALJ found that the medical record did not support any of the alleged symptoms. See *Sarchet*, 78 F.3d at 307 ("If the administrative law judge believed the medical reports that found that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits.")

The ALJ clearly discussed Dault's ADLs and correctly weighed their credibility against the other evidence in the record, pursuant to the Regulations. 16-3p. The ALJ built a logical bridge from the evidence of record to her credibility findings. *Murphy v Colvin*, 759 F3d 811, 815 (7th Cir 2014), quoting *Schmidt v Barnhart*, 395 F3d 737, 744 (7th Cir 2005). The Court can "trace the path" of the ALJ's reasoning where he clearly articulated where she found the Claimant's ADLs inconsistent with the medical evidence. Accordingly, the weight given to Dr. Tate and Dr. Hanna do not warrant a remand.

## D

Dault further contends that the ALJ did not account for her limitations in concentration, persistence, or pace in her RFC determination, despite being instructed to do so by the Appeals Council. Dault also argues that the hypothetical

posed to the vocational expert (VE) concerning her restrictions in concentration, persistence, or pace was improper.

i

Dault further contends that the ALJ did not account for her limitations in concentration, persistence, or pace in her RFC determination. The "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical evidence and other evidence." 20 CFR § 404.1527.

The Court finds that the ALJ provided a sufficient explanation of her finding of moderate limitations in concentration, persistence, or pace. Specifically, the ALJ considered the Claimant's testimony and medical evidence, such as her decreased concentration due to tiredness. (AR 38). Although Claimant reported memory loss (AR 40, 42) the ALJ indicated that she gave Dr. Yakin's consultative report more weight. (AR 42). Dr. Yakin had opined that Dault could understand, remember, and carry out complex instructions. (AR 42). The ALJ also includes the opinion of Dr. Patel, who noted that the Claimant scored very well on a mental status exam. (AR 44).

The ALJ specifically references her moderate difficulties when she limited Dault to uninvolved work. (AR 54). Because the Court is able to trace the ALJ's reasoning and the ALJ has built an accurate and logical bridge to support her decision, the Court does not find that the ALJ has erred in her determination that Dault's limitations in the area of concentration, persistence, or pace are "moderate." *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996).

23

ii

Dault also argues that the hypothetical posed to the VE was improper because it restricted the hypothetical to periods of symptom exacerbation. Dault argues that this is not an accurate restriction because her fibromyalgia is unpredictable. The Commissioner responds that the ALJ's hypothetical properly alerted the VE to the fact that most of the time the Claimant would not have limitations but sometimes she would have moderate difficulties.

"Ordinarily, an ALJ's hypothetical questions to a VE must include all limitations supported by medical evidence in the record." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (internal citation omitted).  In other words, an ALJ must orient the VE to the totality of the claimant's limitations, including those pertaining to deficiencies in concentration, persistence, or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

The ALJ posed the following hypothetical to the VE, Dennis Gustafson, at the second hearing:

> **Q** Okay, I would like you to please consider the ability to perform sedentary and light exertion work with occasional climbing ramps, and stairs, and ladders. Occasional balancing, stooping, kneeling, crouching, crawling. No climbing ropes or scaffolding. No operating a motor vehicle. No concentrated exposure to temperature extremes or hazards such as dangerous machinery or unprotected heights. I would like you to also please assume only occasional work interaction with the public. **And I would like you to assume that because of mental impairments and symptoms combined, Ms. Dault may have periods of exacerbation resulting in moderate limitations in concentration, persistence or pace such that she retains only the ability for competitive work activities that are detailed, but uninvolved. And to deal with little change in the work place, so no more than a few concrete variables.** With these limitations, would Ms. Dault be able to perform past work?

24

(AR 89) (emphasis added). Later on during the VE's testimony, the ALJ asked the VE the following:

> **Q** If it's likely that there would be at least two days a month of absenteeism, what does that do for these jobs?
> **A** Two days per month would be kind of right on the edge. If it's more than two certainly it will result in loss of employment over time, two certainly might.
> **Q** What about the individual who's getting to work every day, Mr. Gustafson, but is distracted by her pain and is unable to maintain consistent persistence or pace through the day and is off task 15 percent of the day or more above and beyond normally required productivity allowance?
> **A** Okay, more likely than not that's going to result in lost employment over time due to inadequate productivity.
> **Q** If a person was getting to work every day, Mr. Gustafson, and in order to continue work through the full day, required additional break time of 15 minutes in the morning and 15 minutes in the afternoon in order to rest enough to be able to go back to the work station and continue work activities. So just a mere 15 minute break wouldn't be enough, it had to be at least an half an hour break to rest before going back to work, does that effect these jobs?
> **A** It would. That would be allowed by an employer only on a temporary, not an ongoing basis without a special job accommodation.

(AR 89).

Dault raises the argument that the hypothetical is vague because the ALJ phrased his hypothetical as "may have periods" instead of explaining that the symptoms wax and wane. The Court, however, does not find that the hypothetical was vague, because it accounts for the ALJ's RFC finding, and the VE understood it as phrased. Accordingly, the hypothetical was not improper and a remand is unnecessary.

**E**

Finally, Dault makes the argument that the ALJ's factual findings are not supported by substantial evidence. Dault raises her previous arguments in her Motion and argues that the ALJ's findings on each of these points are not supported by substantial evidence.[5] Dault also argues that the ALJ erred by placing the burden on Dault to prove that she is unable to perform a limited range of light or sedentary work if so motivated. (Doc. 17, p. 40; AR 55). The Commissioner counters that Dault mischaracterizes the burden of proof at step five.

Pursuant to 42 U.S.C. § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 U.S.C. 405(g). The entire administrative record must be reviewed for substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F3d 836, 841 (7th Cir2007), quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

According to the Social Security Act, the ALJ must conduct the following sequential inquiry:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000); 20 C.F.R. § 404.1520(a). A claimant must satisfy steps one through three to be found

---

[5] On page 39-40 of Dault's Motion, she argues that the ALJ should consider the Claimant's inability to sustain activity over the course of a full work day and/or work week. The argument is not articulated and poorly worded, so the Court is unable to address this argument.

disabled; if she cannot satisfy step three, at step four she "must demonstrate that she lacks the residual functional capacity to perform her past work. Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy." *Ferguson v. Astrue*, 541 F. Supp. 2d 1036, 1040 (E.D. Wis. 2008); *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

The Court will not address the arguments previously addressed in this Order, as the Court finds the ALJ's findings are supported by substantial evidence. However, Dault does raise a new objection that the ALJ improperly shifting the burden of proof at step five of the sequential evaluation process.

Dault takes issue with the ALJ's statement that "the claimant has failed to meet her burden of establishing inability to perform a limited range of light (or sedentary) work if so motivated." (AR 55). The Court is unable to determine whether "if so motivated" was intended to reference the Claimant's burden or her motivation to work. In either course, the comment is concerning. Again, the Claimant's burden is to produce evidence of her disability from steps one through three, and if she cannot prove disability at step three, she must prove disability at step four.  A claimant proves that he or she is unable to perform any past work, as Dault did here, as she is unable to work as a telecommunicator. (AR 55).

Next, the burden then shifts to the Commissioner. In the instant case, the Commissioner met her burden of showing that Dault was able to engage in some type of substantial gainful employment. At steps four and five, the ALJ considered Dault's RFC. Here, the ALJ calculated Dault's RFC to include light and sedentary work, and supported this finding through substantial evidence in the record. The ALJ relied upon the Medical-Vocational Guidelines as well as the VE's testimony at step five of the evaluation. The ALJ found that there are jobs that exist in significant numbers in the national economy that the Dault can perform. (AR 55-

56). 20 C.F.R. § 404.1545(a)(1). These jobs include an inspector, linen grader, and mold sheet cleaner. (AR 56). Therefore the Commissioner's burden was met pursuant to the sequential evaluation process.

Although the ALJ's particular statement here seems inappropriately placed, it is at most unclear as to the burden of proof. Because the Court finds that the steps in the sequential evaluation process were completed, and in particular that the Commissioner met her burden at step five, a remand is not warranted. Even if the statement by the ALJ was intended to place a new burden on Dault, a remand is not appropriate in this case because the Court is convinced that the ALJ will reach the same result. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir 2011). Without the comment, the proper burdens provided in the five step sequential evaluation sequence were met.

For the reasons discussed above, the Court finds that the Commissioner adequately supported her conclusions.

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is DENIED, the Defendant's Motion for Summary Affirmance is GRANTED. The Court AFFIRMS the ALJ's Decision. This matter is now terminated.

*It is so ordered.*

Entered on September 29, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE